**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION,<br><br>        Plaintiff,<br><br>   vs.<br><br>WIX FILTRATION CORPORATION,<br><br>        Defendants.<br>_____/<br><br>AND RELATED COUNTER-ACTION.<br>_____/ | CASE NO. CV F 06-0098 LJO DLB<br><br>**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE LITERAL INFRINGEMENT** (Doc. 128) |

This is a patent case involving plaintiff Parker-Hannifin Corporation's ("Parker") oil filter patents and fuel filter patents. By notice filed on January 30, 2008, Parker seeks summary judgment pursuant to Fed.R.Civ.P. 56 against Wix Filtration Corporation for literally infringing upon claim 16 of Parker's U.S. Patent No. 6,986,426 ("the '426 patent"), claims 1 and 9 of U.S. Patent No. 6,797,168 ("the '168 patent"), and claim 20 of U.S. Patent No. 7,163,623 ("the '623 patent"). On February 20, 2008, defendant Wix Filtration Corporation ("Wix") filed its opposition to the motion. (Doc. 178.) Thereafter, the Court issued its ruling on the "claim construction" of terms contained in the patents. (Doc. 201.) The Court then ordered the parties to meet and confer and update their motions for summary judgment based upon the Court's construction of the claim terms. Parker filed its supplemental brief on March 27, 2008. (Doc. 215.) Wix responded to the supplemental brief on April 2, 2008. (Doc. 2226.) The hearing for April 10, 2008 was vacated and the matter was hereby submitted on the

pleadings. See Local Rule 78-230(h).  Having considered the moving, opposition, reply papers, and the supplemental briefing, as well as the Court's file, the Court issues the following order.

## FACTUAL BACKGROUND

U.S. Patent Nos. 6,797,168 ("the '168 patent"); 6,986,426 ("the '426 patent"); and 7,163,623 ("the '623 patent") are owned by Plaintiff Parker Intangibles LLC.  Parker contends that these patents are infringed by three fuel filter parts sold by Wix.  In this motion, Plaintiff seeks summary judgment for literally infringing upon claim 16 of Parker's '426 patent, claims 1 and 9 of the '168 patent, and claim 20 of the '623 patent.  Parker contends that Wix infringes on claim 16 of the '426 patent by making, using, selling and offering for sale oil filter elements designated as Wix 57314.  Parker also contends that Wix infringes claim 9 of the '168 patent by making, using, selling and offering for sale fuel filter elements designated Wix 33599 (primary) and Wix 33599 (secondary).  Finally, Parker contends Wix infringes claim 1 of the '168 patent and claim 20 of the '623 patent by making, using, selling and offering for sale fuel filter elements designated Wix 33899 (secondary).

In its supplemental briefing, Parker withdrew it motion for summary judgment as to claims 1 and 9 of the '168 patent and claim 20 of the '623 patent. (Doc. 215.)  Accordingly, this order addresses the motion as to claim 16 of Parker's '426 patent.

## ALLEGED INFRINGEMENT OF THE '426 PATENT
## BY THE WIX 57314 OIL FILTER

A.  **Summary of Parker's Arguments**

Parker states that for the '426 patent, the only claim at issue in the motion is claim 16:

> 16. A filter element removably positionable within a housing, the filter element including
>
> a ring of filtration media circumscribing a central axis and having first and second ends;
>
> **an end cap assembly at the first end of the filter media** having a first annular end cap sealingly bonded to the  first end of the filtration media, and a second annular end cap sealingly bonded to the second end of the filtration media;
>
> the second end cap including a central opening along the central axis of the filter element;
>
> **said end cap assembly at the first end of the filter element including**

> **a central opening along the central axis of the filter element, said central opening of said end cap assembly having a smaller diameter than said central opening of said second end cap, and being defined by an annular flange integral with an inner surface of said end cap assembly and projecting axially inward from said end cap assembly toward said second end cap and terminating at a point closer to said end cap assembly than said second end cap,**
>
> said annular flange spaced radially inward from the ring of filtration media;
>
> and a series of axially-projecting protrusions affixed to said end cap assembly and located radially between said annular flange and said ring of filtration media, said protrusions projecting axially inward from said end cap assembly from said end cap assembly toward said second end cap and terminating at a point closer to said end cap assembly than said second end cap, wherein the end cap assembly remains with the filter element when the filter element is removed from between the housing portions. (Doc. 139, Ex. 3, '426 patent, col. 14, lines 8-36, emphasis added.)

Parker contends that the claim construction does not alter its infringement motion. The 57314 oil filter element has a ring-shaped (i.e., "annular") flange that is molded onto the top portion of the central cylinder. Thus, Parker argues the annular flange is "integral" with the top portion of the central cylinder because the annular flange and top portion of the central cylinder are "formed in one piece," i.e., integral.

In its supplemental brief, Parker states that the Court's claim construction of "end cap assembly" impacts this motion. In the claim construction, the Court construed "end cap assembly" as a "collection of components comprising the end piece of at least a combination of a flat annular end cap and a separate annular end piece." (Doc. 201, p. 17.)[1] Parker argues that assuming the Court does not reconsider its construction of "end cap assembly," the Wix 57314 oil filter element still has an "end cap assembly" including a "flat annular end cap" and a "separate annular end piece" under the Court's claim construction. In its supplemental brief, Parker includes a photograph of a "deconstructed" Wix 57314 Filter. The photograph and supporting expert testimony states that the Wix 57314 filter has a "first end cap" and a "separate annular end piece," which together form the "end cap assembly." (Doc. 215 (Under Seal) p. 2.) Parker argues that there is an annular disk-shaped component in the 57314 oil filter element

---

[1] Parker has filed a motion for reconsideration of the Court's construction of the claim terms "end cap assembly" in the '426 patent, the '537 patent and the '623 patent. (Doc. 213.)

that is flat. This disk shaped portion of the "top end cap" is flat.

**B.     Summary of Wix's Arguments**

Wix contends that the Wix 57314 does not infringe on claim 16 of the '426 patent. Wix disputes that the 57314 oil filter has a "flat annular end cap" and "separate annular end piece." Wix notes that the top end cap is an annular member that is glued to the top of the filter media and has a peripheral skirt. The bottom end cap of the Wix filter element is integral with the central cylinder, on which the flange and protrusions are located. The flange and protrusions on the central cylinder are part of the bottom end cap. There is no top end cap assembly and no separate annular end piece

Further, Wix argues that there is not a separate annular end piece. Wix argues that Parker created a separate annular end piece by **cutting the top off** of the central cylinder. Parker fabricated a "separate" piece by cutting it up. Therefore, the design of the Wix filter element does not infringe.

**ANALYSIS AND DISCUSSION**

**A.     Summary Judgment Standards**

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the

court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.    Summary Judgment Standards in Patent Cases**

In a patent case, summary judgment is appropriate: 1) where "only one conclusion as to infringement could be reached by a reasonable jury;" or 2) "when the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed.Cir. 2002), *cert. denied*, 537 U.S. 995 (2002).

Patent infringement analysis involves two steps: 1) claim construction; and 2) application of the properly construed claims to the accused device or method. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step is a matter of law. *Id.* at 979.

This Court has completed the first of the two steps. The Court has construed the claims presented by the parties. On March 14, 2008, this Court issued an order on claim construction construing the claim terms presented and disputed by the parties. (Doc. 201.) The parties new request the Court determine the second step of infringement.

Parker asserts a "literal" infringement of its patents. For literal infringement, once the claims have been correctly construed to determine their scope, the claims must be compared to the accused device. *See Markman*, 52 F.3d at 976. To prove infringement, a patent holder must show that the accused device or method meets each claim limitation, either literally or under the doctrine of equivalents. See *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1324 (Fed.Cir.2003). "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *TechSearch, L.L.C.*, 286 F.3d at 1371. "Any deviation from the claim precludes such a finding." *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1330 (Fed.Cir. 2001). Plaintiff bears the burden of proving that each accused product "includes every limitation of [an asserted] claim or an equivalent of each limitation." *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed.Cir.1994).

Infringement is a question of fact. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed.Cir. 2004); s*ee Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998) (the second step of the infringement analysis is a factual question). The court can resolve the issue on summary judgment only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Frank's Casing Crew*, 389 F.3d at 1376. "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Frank's Casing Crew,* 389 F.3d at 1378. Stated another way, the absence from the accused product of one limitation in the claim means there is no literal infringement of that claim.

In this case, the parties dispute whether the Wix filter element infringes upon the '426 patent. The parties ask the Court to a factual comparison of the various components of the Wix 57314 oil filter and the '426 patent and determine whether there is infringement. The arguments the parties make in their motions direct a factual decision, based upon the Court's claim construction, as to whether the accused device infringes. For instance, the Court construed "separate annular end piece" as "a separate piece attachable at the end of the filter, annular in shape with protrusion." (Doc. 201 p.21.) Wix contends that the only way the Wix 57314 oil filter has a "separate annular end piece" is because Parker

6

cut off the top of the central cylinder. Whether there has been a fundamental alteration of Wix's devices solely to create elements which allegedly infringe is a factual dispute. This factual decision the Court cannot decide in a summary judgment. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, plaintiff's motion summary judgment as to the '426 patent is denied.

**E.    Allege Infringement of the '168 and '623 Patents by the 33599 AND 33899 Fuel Filter Elements**

In its supplemental brief, Parker withdrew its motion for summary judgment for patent infringement as to the '168 and '623 patent claims and accused devices. Parker acknowledged that the Court's claim construction of the claim terms "keys" and "valve actuating portion" raises potential issues of material fact as to infringement. Accordingly, Parker withdrew its motion.

**CONCLUSION**

For the foregoing reasons, the Court orders as to Parker's motion for summary judgment as follows:

1. The motion for summary judgment as to claim 16 of patent '426 is DENIED.
2. The motion for summary judgment as to claims 1 and 9 of the '168 patent and claim 20 of the '623 patent is WITHDRAWN by Parker.

IT IS SO ORDERED.

Dated:   April 9, 2008                             /s/ Lawrence J. O'Neill
                                                         UNITED STATES DISTRICT JUDGE