IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION,<br><br>              Plaintiff,<br><br>      vs.<br><br>WIX FILTRATION CORPORATION,<br><br>              Defendants.<br>_____/<br><br>AND RELATED COUNTER-ACTION.<br>_____/ | CASE NO. CV F 06-0098 LJO DLB<br><br>**ORDER ON WIX'S MOTION FOR SUMMARY JUDGMENT THAT CLAIMS OF PATENT '623 ARE INVALID**<br>(Doc. 135) |

This is a patent case involving plaintiff Parker-Hannifin Corporation's ("Parker") oil filter patents and fuel filter patents. By notice filed on January 31, 2008, defendant and counter claimant Wix Filtration Corporation ("Wix") seeks summary judgment pursuant to Fed.R.Civ.P. 56 against plaintiff and counter defendant Parker for invalidity of Parker's U.S. Patent No. 7,163,623 ("the '623 patent"). On February 20, 2008, Parker filed its opposition to the motion. (Doc. 172.) Wix filed its reply on February 29, 2008. (Doc. 193.) Thereafter, the Court issued its ruling on the "claim construction" of terms contained in the patents. (Doc. 201.) The Court then ordered the parties to meet and confer and update their motions for summary judgment based upon the Court's construction of the claim terms. Wix filed its supplemental brief on March 27, 2008. (Doc. 210.) Parker responded to the supplemental brief on April 2, 2008. (Doc. 223.) The hearing for April 10, 2008 was vacated and the matter was

submitted on the pleadings. See Local Rule 78-230(h). Having considered the moving, opposition, reply papers, and the supplemental briefing, as well as the Court's file, the Court issues the following order.

## FACTUAL OVERVIEW

This is a patent case involving plaintiff's oil filter patents and fuel filter patents. The filters are manufactured and sold by Parker for use in Ford F-series trucks and E-series vans. Parker is the original equipment manufacturer for the oil filters. Parker and Wix both supply replacement (aftermarket) disposable cartridge fuel and oil filter elements, including replacement oil and fuel filter elements for the Ford series trucks and vans.

The '623 patent is generally directed to fluid filter elements (e.g., fuel filter elements) for vehicles that utilize a keyed latch valve to prevent a user from operating an engine without a fuel filter element (or an improper element) in the filter housing. (Doc. 172, Parker's Opposition to Motion, p.1-2, citing to Patent '623.) The '623 patent discloses and claims a filter element for filtering vehicular fluids such as fuel. (Doc. 172, Parker's Opposition, p.3.) The invention of the '623 patent prevents the operation of the filter without a filter element in place (or with an improper element in place). *Id.* It accomplishes this task by equipping the filter element with key(s) that engage a valve mechanism mounted inside the vehicle engine's filter housing. *Id.* When the key(s) engage the valve mechanism, the valve-actuating portion of the filter element causes the valve mechanism to slide down the valve standpipe (also mounted in the engine's filter housing). *Id.* This action opens a valve in the standpipe and allows fluid (e.g., fuel) to flow into the filter housing, where it is filtered by the filter element's media before being introduced into the fuel injector system. *Id.* A filter element lacking the proper key configuration will prevent the filter element from being properly located in the engine's filter housing. *Id.*

## WIX'S ARGUMENTS THAT
## CERTAIN CLAIMS OF PATENT '623 ARE INVALID

**A.   Overview of Wix's Argument on the '168 and '623 Patents**

In early 2006, after Parker sued Wix for infringement, Wix redesigned the accused fuel filter to eliminate what is called the "annular base," which is an important claim of the Parker patents. In

response to Wix's redesign, Parker submitted a continuation patent which was issued on May 24, 2006 - - - the '623 Patent. Parker then added the '623 Patent to this litigation in 2007.

Wix asserts that Claims 20-25, 31 and 33-36 in the '623 Patent are invalid. Wix asserts that these patent claims fail because they fail to claim an "annular base," which is an important part of the invention disclosed in the patent. The '623 Patent is part of the '168 fuel filter family of patents. The '623 patent is a "continuation patent" and shares a common specification with the '168 patent and other patents in this family. (Doc. 136 p.3 n.3.) Claims 20-25, 31 and 33-36 do not include the claim term of "an annular base." Wix contends these claims are invalid because they lack written description support and are not enabled by the specification of the '623 Patent. Wix contends the claims fail because the '623 patent is a continuation patent and the specification of the original patent, '168 patent, did not contemplate a filter element without an "annular base."

**B.     The Keying Mechanism and the Annular Base**

The technology in the '168 and '623 patents relate to filters, and in particular to a "keying" mechanism in which keys on a filter "unlock" a locking mechanism in the filter housing. As a "continuation application," the '623 patent shares a common specification with the '168 patent and other patents in this family.

The patent specification states that a problem in the art existed when a filter element in a fuel filter housing is replaced with the wrong filter element or when a mechanic accidentally removes a spent filter and replaces the filter housing cover without installing a new filter element. The '623 patent seeks to remedy this perceived problem by using a "keying" mechanism to insure that only the proper filter element can be used in a filter housing and that the flow is shut off when no element is present. (See, e.g., Doc. 139, Exh. 7, '623 patent, col. 4, lines 17-48.)

Wix points out that the specification of the '623 Patent states that the annular base is a part of the invention. The patent does not disclose or contemplate the filter element without an annular base. As described in the patent, the base supports the keys and also provides a location to mount a seal to seal the filter against the central standpipe. (Ex. 7, '623 patent, col. 3, line 66 – col. 4, line 16.) The inventor testified that in every embodiment shown in the patents the annular base supports the keys. (Ex. 23, Knight Dep. (Under seal), at 81-85, 87.)

Of the three asserted patents in the fuel filter family ('168 patent, the '623 patent, and the '692 patent), nearly every claim of the 79 total claims claim an annular base as a limitation of the invention. The only exception are the claims which do not describe an annular base, "no base" claims, at issue in this motion, which were added to the '623 patent application after Parker reviewed the Wix redesigned fuel filter. (See, e.g., Exh. 26 (under seal), Ekchian Dec. ¶¶ 22-33.)  Only Claims 20 and 33 are independent, and do not claim an "annular base."  In claim 20, the keys are claimed as projecting from a cylindrical portion of the filter wall. (Exh. 27 (under seal), Ekchian 10/26/07 Report ¶ 129.) Similarly, claim 33 does not claim an annular base. (Exh. 27 (under seal), Ekchian 10/26/07 Report ¶ 131.) Claim 33 instead requires the filter have "a plurality of keys supported centrally within the media ring and projecting radially inward of the first central opening" but does not claim the structure on which the keys are supported.

The invention included an annular base. Every embodiment of the invention included an annular base.  In every embodiment of the invention the applicant described, the annular base performs the dual role of supporting the keys and acting as a mounting base for the seal that seals the filter media against the housing of the central standpipe. (See Exh. 23 (under seal), Knight Dep., at 81-85, 87; Ex. 27 (under seal), Ekchian 10/26/07 Report ¶¶ 128-131.) Nowhere in the patent is there any suggestion that this base is not needed or is optional.

Every claim filed in the '168 patent family (88 total including the '168 and '692 patents and U.S. Pat. No. 6,495,042 ("the '042 patent"), the parent to the '168 patent) included an annular base in the claims.  After Wix redesigned its filter in 2006, Parker filed a continuation patent and for the first time the patent claims did not include the "annular base."  The claims presented in the continuation application that lead to the '623 Patent had to be supported by the specification of the patent.

**C.    Cases which provide that the Claims must be supported by the Specification**

A broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systerms Inc.*, 242 F.3d 1337, 1342-44 (Fed.Cir. 2001); *Lizardtech v Earth Resource Mapping*, 424 F.3d 1336, 1344-46 (The Federal Circuit found a lack of written description where the clear and narrow specification did not support broadened claim

language). In *Lizardtech*, the patentees failed to include enough detail in the specification to enable the element "seamless DWT" (discrete wavelet transformations). 424 F.3d at 1345. The specification did not enable other processes for creating a seamless DWT, only the method by which "updated sums of DWT coefficients" are maintained. Id. at 1344. The court, therefore, found the patent invalid because the claim generically captured "seamless DWTs," i.e. all seamless DWTs, but did not enable the claims as to certain types of coefficient seamless DWTs. Id. at 1345.

There are other examples of when a patent has been invalidated because the claims are not limited to what is set forth in the specification. *See*, *e.g.*, *Automotive Technologies Intern., Inc. v. BMW of North America, Inc.*, 501 F.3d 1274 (Fed.Cir.2007) (affirmed summary judgment of invalidity because the specification enabled only mechanical side impact sensors when the claims included both mechanical and electronic side impact sensors); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed.Cir.2007) (affirmed summary judgment of invalidity where claims to front-loading fluid injectors were not limited to injectors with jackets, but the specification did not enable injectors without jackets); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234 (Fed.Cir.2003) (affirmed summary judgment of invalidity because claims to steel strips were broad enough to cover strips of either Type I aluminum or Type II aluminum, but the specification enabled only strips with Type II aluminum).

Wix argues that Parker merely seeks to claim something it did not invent - - a filter without an annular base.

## PARKER'S OPPOSITION TO WIX'S MOTION
## RE INVALIDITY OF THE '623 PATENT

**A.     Overview of the '623 Patent**

The '623 patent is a continuation of an application which traces back to patent '168. No new matter was added to the patents as the family developed. The '623 patent discloses and claims a filter element for filtering vehicular fluids such as fuels. The keys on the filter element, and their ability to actuate a valve mechanism are a central part of the inventions. When the key(s) engage the valve mechanism, the valve-actuating portion of the filter element causes the valve mechanism to slide down the valve standpipe (also mounted in the engine's filter housing). This action opens a valve in the standpipe and flows fluid (e.g., fuel) to flow into the filter housing, where it is filtered by the filter

element's media before being introduced into the fuel injector system.

The keys can be mounted in a number of ways, but the precise way in which the keys are supported is not critical to the inventions, so long as they are mounted and configured to actuate a fuel valve once installed.

The annular base is not critical to mounting a seal to separate the fluid volume outside the filter media from the fluid volume inside the filter media. One skilled in the art would have readily recognized that these volumes must be separated to prevent fuel from flowing directly from the filter-area inlet to the standpipe (and thus the rest of the fuel system) without first passing through the filter media.

**B.      Standard for Invalidity**

The patent statute 35 U.S.C. § 112 ¶ 1 has three requirements: best mode, written description, and enablement. *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 921 (Fed. Cir. 2004). Patents enjoy a strong presumption of validity. 35 U.S.C. § 282 (2007).

**Best Mode:** The parties do not dispute "best mode."

**Written Description:** Compliance with the written description requirement is a question of fact. *Univ. of Rochester*, 358 F.3d at 927. In order for a patent to comply with the written description requirement, the patent as a whole need only convey to one skilled in the art that the inventor at the time of filing had possession of the invention now claimed. *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000). The Federal Circuit and its predecessor have repeatedly instructed that disclosure of a narrow species may be a sufficient written description for a later-claimed and broader genus that includes the species. *See, e.g.*, *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124 (Fed. Cir. 2004). A narrow disclosure can meet the written description requirement with respect to broad claims that cover undisclosed embodiments. *See Bilstad*, 386 F.3d at 1124. There is no all-encompassing requirement that a "critical" or "essential" element found in the specification be recited in a claim. *See Special Equipment Co. v. Coe*, 324 U.S. 370 (1945).

**Enablement:** It is well established that the enablement requirement is satisfied when the specification teaches those of ordinary skill in the art to make and use the invention without "undue experimentation." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). In *Wand*s, the Federal Circuit set

forth eight factors a court may consider in determining whether undue experimentation would be required to make and use the invention: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art; and (8) the breadth of the claims. Id. at 737.

**C.     The '623 Claims are "Enabled" and Supported by the Written Description**

Wix asserts that each of claims 20-25, 31, and 33-36 of the '623 patent should be found invalid. Wix's argument is based on the lack of a recitation of an annular base in those claims. To succeed on its claim Wix must show by <u>clear and convincing</u> evidence that the inventor clearly indicated that the invention was limited to embodiments having an annular base. *SRAM*, 465 F.3d at 1357; *Cordis*, 339 F.3d at 1365.

**1.     The annular base is not critical for supporting the keys**



The keys 116 are shown mounted on both the annular base 108 and the axially inwardly extending cylindrical portion 104. As such, the keys extend axially outward from the annular base, and radially inward from the cylindrical portion. Based on this drawing alone, one skilled in the art would recognize that the keys could be mounted to either the annular base or the cylindrical portion, and would perform their intended function the same in either case.

The specification explicitly states as much. "Each key has one radially outer edge attached directly to the cylindrical portion 104 and another axially inner edge attached directly to the annular base 108, although the keys could be attached to just one of these elements." (See '623 patent, col. 8,

ll. 51-55.)

Dr. Charles Garris, one skilled in the art, states that with respect to the first embodiment (as shown in Fig. 5), the patent explicitly states that the keys need not be attached to the annular base. ('623 patent, col. 8, ll. 54-55.)

Dr. Garris' opinion contradicts the opinion of Wix's expert, Dr. Ekchian. Because the issue of written description is a question of fact, such contradictory expert reports alone raise a material issue rendering summary judgment inappropriate. *See In re Gabapentin Patent Litig.*, 395 F. Supp. 2d 175, 183 (D.N.J. 2005)

### 2. The annular base is not critical for mounting a seal

One skilled in the art would readily recognize that the fluid volumes must be separated to prevent fuel from flowing directly from the filter-area inlet to the standpipe (and thus the rest of the fuel system) without passing through the filter media. Based on the patent disclosure, one skilled in the art as of the patent filing date would have understood that there must be a seal separating incoming fuel from the outgoing fuel. Garris Rebuttal Report at 81.

### 3. Written Description does not limit the invention to the embodiments

There is nothing in the '623 patent suggesting, let alone clearly indicating (as would be required under *Gentry* to invalidate the patent as non-compliant with the written description requirement), that the invention is limited to embodiments having an annular base. *Cordis*, 339 F.3d at 1365. Given a fair reading of the '623 patent at the time of its filing, one of skill in the art would have immediately understood that the annular base is merely a convenient structure found in the preferred embodiments.

Wix heavily relies is *SciMed Life Systems v. Advanced Cardiovascular Systems,* 242 F.3d 1337 (Fed. Cir. 2001). *SciMed* dealt with the issue of claim construction, and not compliance with the written description requirement, Wix's reliance on *SciMed* is wholly misplaced. Wix cites *KSR International Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1741 (2007), which addressed the question of obviousness of an invention in light of combinations of prior art.

### 4. Enablement

Although Wix repeatedly asserts that claims 20-25, 31, and 33-36 of the '623 patent fail for

lack of an enabling disclosure, the Motion does not mention any of the *Wands* factors, and does not contain a single argument as to why one skilled in the art would not be able to make and use the invention absent an annular base without "undue experimentation"—likely because such argument would be futile.

## ANALYSIS AND DISCUSSION

Wix contends that multiple claims in the '623 patent are invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112. Wix contends that the claims in the '623 patent fail to claim an "annular base." The written description of the '623 patent identifies an "annular base," yet an "annular base" is not claimed in the '623 patent claims. (Wix refers these '623 claims as the "no base" claims.)

**A.     Section 112**

Section 112 provides, in relevant part, that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112, ¶ 1.

Once issued, patent claims are presumed to be valid. 35 U.S.C. § 282. The presumption of validity includes a presumption that the patent complies with § 112. The party challenging validity must prove invalidity by <u>clear and convincing evidence</u>. *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1359 (Fed.Cir.1998). Because a patent carries a statutory presumption of validity pursuant to 35 U.S.C. § 282, Wix has the burden of showing by clear and convincing evidence, that Parker's patent is invalid. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006), *cert. denied,* - U.S. -, 127 S.Ct. 2062 (2007).

The proper inquiry in determining whether the requirements of § 112, paragraph one, are met is whether the specification sufficiently apprises one of ordinary skill in the art that the applicant has invented what they claim. *All Dental Prodx, LLC v. Advantage Dental Prods.*, 309 F.3d 774, 779 (Fed.Cir. 2002). The obligation to distinctly claim the subject matter which the applicant regards as

9

his invention, which forms an essential part of the quid pro quo of the patent bargain, "requires the patentee ... to describe [the invention] in such terms that any person skilled in the art to which it appertains may construct and use it after the expiration of the patent." *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005).

The analysis of the first paragraph of §112 determines whether the scope of the patent protection is supported and justified by the specification disclosure. The three requirements of the specification are referred to as the "written description requirement," the "enablement requirement," and the "best mode requirement," respectively. *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 921 (Fed. Cir. 2004). The parties do not dispute that the "best mode requirement" has been met. Therefore, the Court's analysis of the "validity" issues will focus on the "written description" and "enablement" requirements of 35 U.S.C. § 112.

**B.      Written Description and Enablement**

A patent can be held invalid for failure to meet the written description requirement based solely on the language of the patent specification. *PIN/NIP v. Platte Cham. Co.*, 304 F.3d 1235 (Fed. Cir 2002). The specification must contain a "written description" of the invention to demonstrate what idea it is the inventor possessed at the time he filed the application, and the specification must enable one skilled in the art to make the invention without undue experimentation. *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005).

"[A]n applicant complies with the written description requirement 'by describing the invention, with all its claimed limitations, not that which makes it obvious,' and by using 'such descriptive means as words, structures, figures, diagrams, formulas, etc., that set forth the claimed invention.'" *Regents of the Univ. of California v. Eli Lilly*, 119 F.3d 1559, 1566 (Fed.Cir.1997), *cert. denied*, 523 U.S. 1089 (1998). Whether a specification complies with the written description requirement of § 112, ¶ 1, is a question of fact. *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317 (Fed.Cir. 2002).

Here, the question is whether the patent claims are broader than the written description will support. The '623 patent is a continuation patent of an earlier application and patent, the '168 patent.

A patent fails the "written description" requirement if the entirety of the specification of an earlier application would clearly indicate to persons of ordinary skill in the art that the invention described in that application is of a much narrower scope than the invention ultimately claimed in the patent. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed.Cir. 2004) (approving the district court's jury instructions), *cert. denied*, 543 U.S. 1050 (2005). The "essence" of the "written description" requirement is "that a patent cannot claim priority to earlier applications if it includes new matter not present in those earlier disclosures." *Id.*

In opposition to Wix's motion, Plaintiff presents the opinion of its technical expert Dr. Charles Garris. Dr. Garris explains in his rebuttal report that there are three embodiments of the invention described in the '168 patent. (Garris Rebuttal Report, Exh. 29 (under seal) to Dec. Koelsch (Doc. 149).) Dr. Garris reports that in the first two embodiments, no essential function for the annular base is described. The first embodiment, Figure 5, the patent explicitly states that the keys need not be attached to the annular base. In the second embodiment (Figures 12-16), the annular base does not perform an essential function. Dr. Garris also opines that the annular base is not critical, merely convenient, to support a seal to separate the fluid volume outside the filter media from that inside the filter media.

Wix disputes Dr. Garris' opinion as "both misplaced and just wrong." Wix argues that Dr. Garris never addresses that the patent disclosure fails to support claims without "an annular base." Rather, Wix points the Court to the language of the patent and the various references in the specification where the patent refers to the necessity of the "annular base." (See e.g., Doc. 193, Wix's Reply Brief, p. 2.)

Wix cites *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed.Cir. 1998) for the proposition that claims may be no broader than the supporting disclosure. In *Gentry,* the invention was the placement of reclining controls on a central console on a unit of a sectional sofa so as to allow the sofa to have two independent reclining seats face in the same direction (solving a problem present in the prior art). *Gentry Gallery* considers the situation where the patent's disclosure makes crystal clear that a particular (i.e., narrow) understanding of a claim term is an "essential element of [the inventor's] invention." 134 F.3d 1473. Wix also cites *SciMed Life Sys., Inc. v. Advanced*

11

*Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001). In *SciMed Life Sys*, the written description limited the invention to the embodiments in the patent: "the basic sleeve structure for all embodiments of the present invention contemplated and disclosed herein." The court viewed such language as "strong evidence" that the inventor intended his invention to be limited to embodiments containing such an element.

*Gentry* is distinguishable. Here, the specification indicates that the keys may be attached to the cylinder **or** the annular base. (Doc. 139, Exh. 7, '623 patent, col. 8, lines52-1-54.) Gentry involved a patent disclosure in which there <u>could only be</u> on embodiment. *SciMed Life Sys*. is also distinguishable. The Court reached the conclusion based on an <u>explicit disclaimer</u> of the specific structure, not the <u>mere absence</u> of any reference to that structure in the specification. Unlike in *SciMed*, the specification in this case contains no disclaimer.

While the Court acknowledges that there is some omission of terms, the Court finds that Wix has not carried its burden. A patent is presumed valid. Wix has the burden of showing <u>by clear and convincing evidence</u> that the claims of '623 patent are invalid. Dr. Garris' testimony and his report, offered without objection, along with the written description, creates a sufficient evidentiary foundation that a person skilled in the art would understand that the inclusion of an annular base was not the only way to make the invention.[1] This evidence creates an issue of material fact. Accordingly, summary judgment is denied.

## CONCLUSION

For the foregoing reasons, the Court orders as to Wix's motion for summary judgment as to the invalidity of the '623 patent is DENIED.

IT IS SO ORDERED.

**Dated:   April 9, 2008**          /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE

---

[1] Wix argues that Dr. Garris is a "say anything" expert. It is not for this Court to judge credibility on a motion for summary judgment. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1153 (9th Cir. 1999) (The court "may not weigh the evidence or assess its credibility.")