1
2
3
4
5                    **IN THE UNITED STATES DISTRICT COURT**
6                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**
7

8  PARKER-HANNIFIN CORPORATION,              CASE NO. CV F 06-0098 LJO DLB

9                          Plaintiff,        **ORDER ON MOTION FOR SUMMARY**
                                             **JUDGMENT RE NON-INFRINGEMENT**
10        vs.                                (Doc. 144)

11  WIX FILTRATION CORPORATION,

12                          Defendants.
    _____/
13

14  AND RELATED COUNTER-ACTION.

15  _____/

16          This is a patent case involving plaintiff Parker-Hannifin Corporation's ("Parker") oil filter

17  patents and fuel filter patents. By notice filed on January 31, 2008, defendant and counter claimant Wix

18  Filtration Corporation ("Wix") seeks summary judgment pursuant to Fed.R.Civ.P. 56 against plaintiff

19  and counter defendant Parker on the bases of non-infringement of Parker's patents. On February 20,

20  2008, Parker filed its opposition to the motion. (Doc. 183 (under seal).) Wix filed its reply on February

21  29, 2008. (Doc. 195.) Thereafter, the Court issued its ruling on the "claim construction" of terms

22  contained in the patents. (Doc. 201.) The Court then ordered the parties to meet and confer and update

23  their motions for summary judgment based upon the Court's construction of the claim terms. Wix filed

24  its supplemental brief on March 26, 2008. (Doc. 212.) Parker responded to the supplemental brief on

25  April 2, 2008. (Doc. 224.) The hearing for April 10, 2008 was vacated and the matter was submitted

26  on the pleadings. See Local Rule 78-230(h). Having considered the moving, opposition, reply papers,

27  and the supplemental briefing, as well as the Court's file, the Court issues the following order.

28  /////

                                              1

**THE CLAIMS AT ISSUE IN  THE '139 FAMILY AND '168 FAMILIES**

**The Patents-in-Suit**

·        U.S. Patent Nos. 6,554,139 ("the '139 patent"), 6,983,851 ("the '851 patent"), 6,986,426 ("the '426 patent"), and 7,086,537 ("the '537 patent) (collectively the "**oil filter** patents" or the " **'139 family of patents**")

·        U.S. Patent Nos. 6,797,168 ("the '168 patent"), 7,070,692 ("the '692 patent"), and 7,163,623 ("the '623 patent") (collectively "the **fuel filter** patents" or the "**'168 family of patents**")

The claims at issue are as follows:

Whether the Wix 57314 oil filter infringes:

Claims 1-6 and 8-14 of the '139 patent;

Claims 1-6, 8-12, 14-18, and 20-27 of the '851 patent;

Claims 1-9, 11-13, and 15-19 of the '426 patent; and

Claims 1 and 3-12 of the '537 patent.

Whether the Wix 33899 secondary filter infringes:

Claims 1, 3, 5, 21-24, and 26-30 of the '168 patent;

Claims 1, 3-9 and 11-13 of the '692 patent;

Claims 1, 3-6, 9-12, 14-15, and 18 of the '623 patent.

Whether the Wix 33599 secondary filter infringes:

Claims 1, 3, 5, 6, 9-18, and 20-30 of the '168 patent.

Whether the Wix 33599 primary filter infringes:

Claims 1, 6, 9-10, 13, 15-16, 20 of the '168 patent.

**WIX'S ARGUMENTS RE NON-INFRINGEMENT**

**A.      The '139 Patent Family**

The '139 patent family relate to a canister-type oil filter that in operation is housed in a canister on the engine body and accessed by removing a cap.  The claims of the patents at issue are only directed to the filter element itself. The locking mechanism on the support core in the filter housing is not claimed in the claims.

2



In this Figure, "Figure 3" of the patent, the housing 32 holds a removable filter element 36. The filter element is placed in the housing and an opening in the center of the filter element allows it to slide over support core 56. When the filter element is inserted, the housing cap 34 can be screwed on to close the housing.

**B.   Wix's 57314 Oil Filter Element**

Wix argues that it was aware of the '139 patent at the time it was designing the 57314 filter, Wix set out to design a filter which would interoperate with the filter housings on the Ford trucks, but would not infringe the claims of Plaintiff's patents.  (Ex. 31, Ferguson Dec., ¶8.)

In the Wix 57314 oil filter, the top end cap is annular with a peripheral skirt and covers only the

1  top of the filter media. The top end cap has no flanges, protrusions, or any of the structures disclosed and

2  claimed in the '139 patent family.  As it has no protrusions, the upper end cap does not engage the valve

3  mechanism on the filter housing as required by the patents.




17  Wix argues that the bottom end cap in the Wix design is even more radically different from the '139

18  patent.  Wix has incorporated a central, cylindrical tube into the new filter and improves structural

19  integrity.  The annular flange and protrusions in the Wix filter are located in the central cylinder, and are

20  part of the bottom end cap, not the top end cap.  The upper and lower end caps are not flat. Each has an

21  inner and outer skirt that significantly increases its rigidity and strength as well as increases the bonding

22  surface with the filter media.

23      The annular flange and protrusions in the Wix filter are located in the central cylinder, and are

24  part of the bottom end cap, not the top end cap.  The protrusions and annular flange are molded to the

25  central cylinder and are made the bottom end cap.  The top end of the central cylinder extends through

26  the large central opening in the top end cap and rises a short distance above the top end cap.  The upper

27  and lower end caps are not flat. Each has an inner and outer skirt that significantly increases its rigidity

28  and strength as well as increases the bonding surface with the filter media.



## C.    The Wix 57314 Filter Does Not Infringe

### 1.    The claims relating to Protrusions on the Top End Cap

Parker's '139 patent and the '851 patent, claim the preferred embodiment of the invention where the annular flange is "integral with" the top end cap and the protrusions are <u>permanently fixed</u> to, or extend from, the top end cap.

Wix's filter does not infringe because:

-    Wix 57314 oil filter has no annular flange "integral" with the top end cap. Instead, the annular flange is integral and molded to a central cylinder that extends from the bottom end cap.

- The protrusions on the Wix 57314 oil filter are not "permanently" affixed or fixed to the top end cap. Rather, they are attached to, and molded as part limitations, the central cylinder that is part of the bottom end cap.

- The protrusions on the Wix device are located in the central cylinder, and do not extend axially from the first end cap.

- Every asserted claim of the '139 patent and the '851 patent require that the central opening in the bottom end cap be larger than the central opening in the top end cap. (Ex. 1, '139 patent, claims 1 and 13; '851 patent, claims 1, 12, 15, 24, and 26; Ex. 38, Ekchian 11/30/07 Report, ¶ 84.) This limitation is not met in the Wix 57314 oil filter.

Thus, no literal infringement of the '139 and '851 patents exists in this case.

There is not infringment under the doctrine of equivalents. The doctrine of equivalents is a limited exception to the "all elements rule." "The all elements rule acknowledges that each and every element of the claim is material and essential." The doctrine of equivalence is a limited exception which provides that a claim limitation is equivalent if there are only "insubstantial differences" between the claim limitation and the corresponding portion of the accused device. Equivalence is assessed on a limitation-by-limitation basis, rather than from the perspective of the invention as a whole, and that no limitation be read completely out of the claim. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006).

### 1.	The claim directed to protrusions on the top end cap

The Wix device does not meet multiple limitations of every claim in this group. The protrusions and flange of the patent are claimed as part of or integral with the top end cap. The protrusions and flange in the Wix device are not part of the top end cap, are not attached to it, are not integral with it, and do not even touch the top end cap. A filter element whose annular flange is not "integral" with the first end cap and no protrusions affixed to it cannot be equivalent to an annular flange that is "integral" with the first end cap, nor can protrusions **not affixed** to the first end cap be equivalent to protrusions **that are affixed** to the first end cap.

### 2.	The claims directed to a "separate end piece" or "end cap assembly"

Parker's '426 and '537 patents claim that the protrusions are located on an "annular end piece"

1   and/or are part of an "end cap assembly."  Chief Judge Levi denied Parker's motion for preliminary

2   injunction in part because of the lack of a Wix "separate annular end cap."  The Wix 57314 does not

3   have a separate annular end piece located against the surface of the first end cap; the protrusions on the

4   Wix device are molded together with the bottom end cap, not on a separate end piece; and there is

5   nothing in the Wix 57314 that corresponds to the top end cap assembly of the '426 and '537 claims.

6     The only structure in the patent relating to an annular end piece is what is shown in Figure 12,

7   and thus the term "annular end piece" must refer to a structure like that shown in Figure 12.  The Wix

8   filter lacks the "end piece" and "end cap assembly" of the claims. As Chief Judge Levi noted, the Wix

9   filter contains no structure similar to that in Figure 12.



20   The Wix filter also lack a second flat annular end cap or a small central opening in the first end cap.

21   Instead, in the Wix filter, the second cap contains a cylinder and the opening of the first end cap is larger

22   than the opening of the second end cap.  In the Wix filter, the central cylinder portion that is molded in

23   one piece with the bottom end cap performs the function of engaging the valve mechanism  in the

24   housing. The central cylinder does not cooperate or work with the top end cap to do so.

25     The prosecution history of this patent greatly restricts how broadly the separate annular end piece

26   limitation can be read, as Chief Judge Levi noted in denying plaintiff's request for a preliminary

27

28

injection on the '426 patent.[1] (Ex. 42, Oct. 24, 2006 Order, page 9.) The protrusions and their location on the top end cap were used to differentiate the invention from the prior art during prosecution. (Ex. 26, Ekchian Dec., ¶¶ 41-48.)

**D.      The WIX 33899 Secondary Fuel Filter and the WIX 33599 Primary Fuel Filter do not Infringe**

Parker's '168 Patent family requires that the filter element of the patent have an "annular base" that is a material part of the device claimed in these patents.  The specification of these patents describe a filter element having a "keying" mechanism that unlocks and actuates a valve in the filter housing.



Figure 5 of the '623 patent shows keys 116 that are  connected to an "annular base" 108 located in the space inward from the filter media. The keys extend downward from the annular base toward the bottom end cap 96 of the filter element.

**1.      The Wix 33899 Secondary Filter**

The fuel filters at issue in this case are sold in pairs. Each filter set contains a "primary" filter and a "secondary" filter. Typically in diesel engines, one filter is designed primarily to filter water out of the diesel fuel while the other filter is designed primarily to trap particle contaminants.  Plaintiff contends that the secondary filter in the redesigned 33899 infringes claims of the '168 patent family.

[1] Shortly after filing this action, Parker moved for a preliminary injunction.  On October 24, 2006, Chief Judge Levi denied the motion. Judge Levi denied the motion, in part, because a *Markman* hearing was necessary to determine the construction of "separate annular end piece" and whether the Wix cylindrical tube could be a "separate annular end piece." (Doc. 76 p.9.)  In addition, there was a dispute as to whether the "protrusions" must be confined to the top end piece. (*Id.*)

1   In the 33899 Secondary Filter, the central cylinder in the redesigned small filter is made in

2   two segments which are depicted in red and blue. The two segments snap together to form the central

3   cylinder.  Near the mating point, an O-ring (shown in black) is located between two series of ledges.

4   In the new design, there is no longer an annular base inside the cylindrical unit. (Ex. 26, Ekchian Dec.,

5   ¶ 31.) Instead, the rectangular protrusions are molded into the cylinder wall and extend radially inward

6   toward the center of the cylinder. (Id.).





2.      **The 33899 Secondary Fuel Filter Does Not Infringe the "Annular Base" Claims**

The requirement of an "annular base" is a limitation in every asserted claim of the '168 patent

(claims 1, 3, 5, 21-24, and 26-30), every asserted claim of the '692 patent (claims 1, 3-9, and 11-13),

and claims 1, 3-6, 9-12, 14-15, 18 of the '623 patent.

> 1. A filter element . . . wherein the second end cap has a valve-actuating portion,
> including an axially extending cylindrical portion . . . and **an annular base connected
> to the cylindrical portion and extending radially inward from said cylindrical
> portion to define a first central opening which can receive a pipe**, the base having a
> surface facing outwardly toward the second end, and a plurality of keys supported by and

9

1   extending away from said valve-actuating portion in an axially outward direction from
said base . . .

2   (Ex. 5, '168 patent, claim 1) (emphasis added).

3       The Wix 33899 does not have an annular base under any reasonable construction of that term.

4   There is no annular structure.  The rectangular protrusions attach only to the side walls of the cylinder;

5   they are not supported by any base. This entire element, and its function (to support the keys and central

6   seal) has been eliminated. Hence, there can be no infringement.

7   **E.**     **The 33599 Filters do not infringe the '168 Patent**

8       Before it introduced the 33899 redesigned filter, Wix sold a fuel filter set referred to as part

9   number 33599.  The 33599 filter set includes a primary (larger) fuel filter element and a secondary

10  (smaller) fuel filter element.  The original 33599 design was entirely superseded by the redesigned

11  33899.

12  -   Wix's 33599 primary and secondary fuel filter element lack the element of "a cylindrical

13      portion" "terminating prior to the first end cap."

14  -   Wix's 33599 primary and secondary fuel filter elements and Wix's 33899 secondary fuel

15  filter element lack a "plurality of keys supported by and extending away from said valve actuating

16  portion" as recited in independent claim 1 of the '168 patent.



33599

Primary Filter Element

Secondary Filter Element

The primary fuel filter element has a top end cap, a bottom end cap, and a central cylinder. Inside the central cylinder are a series of pointed teeth or protrusions projecting downward.









## 1.     No Cylindrical Portion That Terminates Prior To First End

Parker asserts that the Wix 33599 primary fuel filter and the Wix secondary fuel filter infringe on the Parker '168 patent (claims 9-10, 13, 15-16 and claims 9-18 and 20-30, respectively.)  The main thrust of the claim is it requires "a cylindrical portion" to "terminat[e] prior to the first end cap."

> 9. . . . . I) a cylindrical portion connected at one end to and circumscribing the inner diameter of said annular end cap portion and extending inward into the central cavity from the second end cap toward the first end cap and terminating prior to the first end cap . . . . (Ex. 5, '168 patent, claim 9.)

The 33599 central cylinder portion, in blue, extends from the bottom end cap past the top end cap, and thus does not "terminat[e] prior to the first [top] end cap" as required by the claims.



The central cylinder (shown in red) of the Wix 33599 secondary fuel filter extends from the bottom end cap up to the top end cap, and similarly does not terminate prior to the first end cap.



**F.      Wix Filters do not have a "Plurality Of Keys Supported By And Extending Away From Said Valve-Actuating Portion"**

Claim 1 of the '168 patent requires a "valve actuating portion":

> 1. A filter element . . . wherein the second end cap has **a valve-actuating portion**, including an axially extending cylindrical portion connected to the annular end cap portion and circumscribing the inner diameter of said annular end cap portion and an annular base connected to the cylindrical portion and extending radially inward from said cylindrical portion to define a first central opening which can receive a pipe, the base having a surface facing outwardly toward the second end, and *a plurality of keys supported by and extending away from said valve-actuating portion* in an axially outward direction from said base toward said annular end cap portion of the second end cap each of said keys having a free engaging portion positioned radially inward relative to an inner surface of said cylindrical portion and axially paced away from said annular base.

(Ex. 5, '168 patent, claim 1.)

The meaning of the term "valve actuating portion" is apparently disputed by the parties and will require construction by the Court. Wix contends that the claims require that the keys "extend away" from the valve actuating portion in an axial direction "toward" the annular end cap portion of the second (bottom) end cap.  The accused fuel filters at issue in this case do not have the claimed keys that "extend away" from the valve actuating portion.  Instead, in each of the accused fuel filters, the keys terminate

13

1   within the valve actuating portion and are entirely encapsulated by the claimed valve actuating portion.

2   **PARKER'S OPPOSITION TO MOTION FOR NON-INFRINGEMENT**

3   A.   **The WIX Oil Filter Infringes**

4   Parker argues that the 57314 oil filter element has a first (top) end cap with four protrusions

5   and an annular flange.  Wix improperly compares the accused filter with the preferred embodiments.

6   The question is not whether the accused device looks like figures illustrating a preferred

7   embodiment.  The four protrusions and annular flange are "integral" with the first (top) end cap.  The

8   end cap means the components that cover the filter element at the end of the element.

9   Parker argues that the four protrusions on Wix's "central cylinder" are permanently fixed or

10  permanently affixed to the first (top) end cap.  The four protrusions are molded onto the top portion

11  of the "central cylinder."  The top portion of the "central cylinder" is part of the first end cap.

12  Parker argues that the Wix 57314 oil filter has separate annular end piece and an end cap

13  assembly.  A single molded piece comprised many components with different structures, purposes

14  and function.  One such component of the "central cylinder" is the top annular end piece which

15  Wix's expert characterized as "support" for the four protrusions. The central cylinder has a top

16  portion that covers the inner core of the filter element and that includes four protrusions and an

17  annular flange.  Thus, the top of the central cylinder is part of the first (top) end cap

18  Parker argues that the Wix end caps on the 53314 oil filter is flat, despite the presence of a

19  peripheral skirt.  The skirt attached to the end cap is irrelevant for purposes of infringement.  The

20  proper inquiry is whether the components that cover the filter element have an essentially planar

21  major surface.  *Wix's end caps have an essentially planar* surface, and it is distinctly greater than the

22  dimension of the peripheral skirt.

23  B.   **WIX's 33899 Fuel Filter meets the limitations of the asserted patented claims**

24  Parker's argues that Wix argues (1) a claim construction that improperly limits the claim to

25  preferred embodiments, and (2) the resulting comparison between the accused filter element and the

26  preferred embodiment shown in the patent figures.

27  The 33899 secondary fuel filter has an annular base.  The proper construction of "annular

28  base" means a component or components configured or arranged as a continuous or noncontinuous

14

1   ring and is located near the end of the structure or that act to support something.

2       The Wix ten "teeth" or projections" are also supported by and extend away from the

3   cylindrical portion which is part of the Parker valve-actuating portion.  The Parker patent claims

4   define the valve actuating portion as including various components, one of which is a cylindrical

5   portion.  The keys in the Wix secondary fuel filter are supported by the cylindrical portion.

6       The Wix 33899 second fuel filter element has an annular base that defines a central opening

7   which can receive a pipe.  The "seal supports," the annular base, are located at the end of the

8   cylindrical portion and are therefore the "base" of the cylindrical portion.

9       The Wix 33599 fuel filter elements meet every limitation in the asserted claims of the '168

10  patent.  The cylindrical portions in the 33499 primary and secondary fuel filter elements terminate

11  prior to the first end cap.  In addition, the keys in the 33599 primary secondary fuel filter elements

12  are connected to and extend away from at least one component of the valve-actuating portion.

13              **ANALYSIS AND DISCUSSION**

14  **A.      Standards for Summary Judgment**

15      On summary judgment, a court must decide whether there is a "genuine issue as to any

16  material fact."  F.R.Civ.P. 56©; *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v.*

17  *Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th

18  Cir. 1985); *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).

19  The criteria of "genuineness" and "materiality" are distinct requirements.  *Anderson v. Liberty*

20  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The requirement that an issue be "genuine" relates to the

21  quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion.

22  There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving

23  party."  *Anderson,* 477 U.S. at 248.

24      "As to materiality, the substantive law will identify which facts are material."  *Anderson*, 477

25  U.S. at 248.  "[A] complete failure of proof concerning an essential element of the non-moving

26  party's case necessarily renders all other facts immaterial," and in such circumstances, summary

27  judgment should be granted "so long as whatever is before the . . . court demonstrates that the

28  standard for entry of summary judgment, as set forth in Rule 56©, is satisfied."  *Celotex Corp. v.*

*Catarett*, 477 U.S. 317, 322 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631.  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).  The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Standard for Proof of Patent Infringement**

Infringement of a patent is defined by 35 U.S.C. § 271(a). The statute provides, in pertinent part:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

35 U.S.C. § 271(a).  In a patent case, summary judgment is appropriate: 1) where "only one conclusion as to infringement could be reached by a reasonable jury;" or 2) "when the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed.Cir.2002).

Determination of patent infringement is a two-step analysis. The first step is to construe, or interpret, a claim of the patent. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed.Cir.2001). The second step is to determine whether every limitation of the properly construed claim is found in the accused device, either literally or under the doctrine of equivalents. *Id.* The "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005 (Fed.Cir. 2006). Because infringement is a question of fact, infringement is properly decided at summary judgment only when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device. *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed.Cir.2004). Wix cannot prevail on summary judgment unless the undisputed evidence shows that Wix has neither literally infringed Parker's Patents, nor infringed under the doctrine of equivalents.

In this case, the Court has already concluded the first step of the two step analysis.  The Court has construed the asserted claim terms in its claim construction order. (Doc. 201.)  Thus, the question here is whether every element (i.e., claim limitation) of at least one claim in Parker's patent is present in Wix's fuel and oil filters.  Only a single claim need be infringed to constitute infringement. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n. 1 (Fed.Cir.1987). Every limitation laid out in the patent claim must be found in the accused product to constitute literal infringement. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed.Cir.1997).

Wix is entitled to summary judgment of noninfringement only if the facts and inferences, when viewed in the light most favorable to Parker, could not persuade a reasonable jury to return a verdict in favor of Parker, the non-moving party. *See Anderson*, 477 U.S. at 255.  Summary judgment can be used to determine both infringement and noninfringement. *Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

An accused infringer is entitled to summary judgment if the patent holder fails to put forth evidence that each limitation of the asserted claim is met in the accused device or method, either literally or by a substantial equivalent; mere assertions are insufficient to shoulder the non-movant's burden. See, e.g., *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-78 (Fed.Cir.1989) ("Mere assertion of similarity in the accused and patented devices is insufficient to create a genuine factual issue");

1   see also *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed.Cir.1998)

2   (patentee failed, through the conclusory statements of experts, to raise a genuine issue of material

3   fact precluding summary judgment).

4   **C.**    **Doctrine of Equivalents**

5       Here, Parker defends against the motion on the grounds of the doctrine of equivalents.

6       Under the doctrine of equivalents, "a product or process that does not literally infringe upon

7   the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence'

8   between the elements of the accused product or process and the claimed elements of the patented

9   invention." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 469 F.3d 1005, 1016 (Fed. Cir.

10   2006).  The doctrine recognizes that:

11           [t]he language in the patent claims may not capture every nuance of
12           the invention or describe with complete precision the range of its
              novelty. If patents were always interpreted by their literal terms, their
13           value would be greatly diminished. Unimportant and insubstantial
              substitutes for certain elements could defeat the patent, and its value to
14           inventors could be destroyed by simple acts of copying. *Id.*

15       The doctrine of equivalents has its limitations.  The "all elements" rule is a limitation on the

16   doctrine of equivalents. The "all elements" rule attempts to balance the doctrine of equivalents with

17   the basic patent law principle that claim language defines the scope of an invention and every

18   limitation is material.  Each element contained in a patent claim is deemed material to defining the

19   scope of the patented invention, and thus the doctrine of equivalents must be applied to individual

20   elements of the claim, not to the invention as a whole.  *DePuy Spine, Inc.*, 469 F.3d at 1016-1017.

21   "The rule holds that an accused product or process is not infringing unless it contains each limitation

22   of the claim, either literally or by an equivalent."  *Freedman Seating Co. v. American Seating Co.*,

23   420 F.3d 1350, 1358 (Fed. Cir. 2005).  Although infringement under the doctrine of equivalents is a

24   question of fact, "[w]here the evidence is such that no reasonable jury could determine two elements

25   to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Depuy*

26   *Spine, Inc*.,  469 F.3d at 1013, 1017.

27   /////

28   /////

1    **D.       The Alleged Infringement of the '139 patent family**

2            **1.       The '139 and '851 Patents**

3            Wix argues that Wix accused oil filter element does not infringe on any of the claims of the

4    '139 patent.  Wix notes that the Court has now construed the disputed claim terms central to Wix's

5    motion: "integral," "end cap," "separate annular end piece," "end cap assembly," and "flat," in Wix's

6    favor.  Wix argues that each of the claims of the **'139 and '851 patents** requires that the filter have

7    an annular flange that is "integral" with the first end cap. The also require that the "protrusions"

8    claimed in the patents be "affixed" to the first end cap.  Wix argues that the annular flange and

9    protrusions in its filter are located <u>in the center tube</u> and part of <u>the bottom</u>, not the top, end cap.

10           Parker argues that the Wix 57314 oil filter element infringes the asserted claims of both

11   the '139 and '851 patents under the doctrine of equivalents.  Parker argues that pursuant to the

12   doctrine of equivalents, the four protrusions and the annular flange are integral with the first (top)

13   end cap.   Parker argues that the Court's construction of "integral" and "end cap" do not preclude

14   assertion of the doctrine of equivalents, nor does it support the grant of summary judgment of

15   noninfringement under the doctrine of equivalents. Parker argues that although Wix asserts there is

16   no infringement of the '139 and '851 patents as a matter of law under the doctrine of equivalents

17   (doc. 145, at pp. 17-18), Wix's arguments do not establish an absence of material fact on the issue,

18   nor does Wix establish that the evidence is so clear that no reasonable jury could determine two

19   elements to be equivalent.

20           Parker argues that the facts and expert report of Dr. Garris establish a basis for concluding

21   that the Wix 57314 oil filter element infringes the '139 and '851 patents under the doctrine of

22   equivalents. (Doc. 161, 183, at pp. 11-12; Garris Rpt. 34-77 and Ex. E).  The four protrusions and

23   annular flange are integral with the top end cap.  (See Doc. 183 (under seal) p. 9-11.) The evidence

24   effectively establishes the Wix 57314 oil filter element infringes under the doctrine of equivalents or,

25   at a minimum, raises disputed issues of material fact regarding whether the differences are

26   insubstantial and that must be resolved at trial.

27           Indeed, here, it is not clear from the record that the accused device performs a substantially

28   different function in a different way to achieve an entirely different result.  (See Garris Report, Exh.

28 (under seal), p. 34- 40 to Dec. Koelsch (Doc. 149).)  For instance, Dr. Garris' opinion is that the

function and method of achieving filtration are equivalent.  For claim 12, Dr. Garris states in part:

> "Four protrusions are molded, i.e., permanently affixed, to the radially
> inner annular portion located at the top portion of the center tube.  In
> addition, even if the first end cap is construed to include only the
> radially outer annular portion, the function of the protrusions being
> permanently affixed to the first end cap is the patent is so the
> protrusions will remain with the filter upon removal.  The arrangement
> of the Wix 57314 filter has the same function.  The way this is
> accomplished in the patent is to mold the protrusions onto the first end
> cap.  This is accomplished in the same way in the Wix 57314, wherein
> the protrusions are molded on the radially inner annular portion
> located at the top portion of the center tube. The result in the patent is
> that the protrusions remain with the filter upon removal.  The Wix
> 57314 filter accomplishes this result."  (See Garris Report, Exh. 28
> (under seal), p. 37, Claim 12, to Dec. Koelsch (Doc. 149).)

As this evidence demonstrates, the patent and the accused device perform the same function in

nearly the same manner.  Thus, there are issues of fact as to whether the differences between the

claim limitation and the accused device are insubstantial.

**2.  The Alleged Infringement of the '426 and '537 Patents**

**Claim 16:**  Wix notes that each of the claims of the **'426 and '537 patents** requires an end

cap assembly and/or a separate annular end piece.  Wix argues there is simply no separate annular

end piece or end cap assembly in the accused Wix element as required by each of the asserted '426

and '537 patent claims.  The protrusions in the Wix device are attached to the center tube, which is

not a "separate piece." Further the center tube is not annular, it is cone shaped, technically

"frusto-conical," or a cone-shape where the end is removed.  Finally, there is no "end cap assembly"

because (1) there is no separate annular end piece; and (2) Wix's annular end cap is not flat.

Parker argues that as set forth in Parker's supplemental brief in support of summary judgment

(doc. 215, pp. 1-9), the infringement issue regarding claim 16 of the '426 patent is not changed by

the Court's claim construction.  The grounds for that literal infringement are fully set forth in

Parker's own motion for summary judgment based on claim 16 of the '426 patent.

In ruling on claim 16 of the '426 patent, in Parker's motion for infringement, this Court

found issues of fact which precluded the granting of summary judgment.  (Doc. 233, Court's order

Parker's Motion for Summary Judgment.)  Here, as in Parker's motion for infringement, the same

factual issues exist. Wix contends that the only way the Wix 57314 oil filter has similar elements is because Parker's expert cut off the top of the central cylinder.  Whether there has been a fundamental alteration of Wix's devices solely to create elements which allegedly infringe is a factual dispute. This factual decision the Court cannot decide in a summary judgment.  Accordingly, summary judgment as to claim 16 of the '426 patent is denied.

**Claim 12:** Parker argues that the Court's construction of "separate annular end piece" and "end cap assembly" also does not impact the literal infringement issue with respect to claim 12 of the '426 patent. Parker argues the Wix 57314 oil filter element literally includes an "end cap assembly" based on the Court's current construction, for the same reasons as claim 16 (see doc. 215, pp. 1-9). The Wix 57314 oil filter element has an "end cap assembly" that includes at least a combination of a "flat annular end cap" (id., pp. 2-5) and a "separate annular end piece" (id., pp. 6-9). Parker argues that the Wix 57314 oil filter element, which merely uses different parts to form an "end cap assembly" that is made integral by virtue of those parts being held together when assembled, is the equivalent of the "integral end cap assembly" of claim 12.  The evidence establishes that a reasonable jury could conclude that the two elements are equivalent.

The Court constructed the term "end cap assembly" to mean a "collection of components comprising the end piece of at least a combination of a flat annular end cap and a separate annular end piece." (Doc. 201, p. 17.)  The Court constructed "separate annular end piece" to mean  as "a separate piece attachable at the end of the filter, annular in shape with protrusion."  (Doc. 201 p.21.) Parker includes a photograph of a "deconstructed" Wix 57314 Filter which has a "first end cap" and a "separate annular end piece," which together form the "end cap assembly."  (Doc. 215 (Under Seal) p. 2.)  Parker argues that there is an annular disk-shaped component in the 57314 oil filter element that is flat. This disk shaped portion of the "top end cap" is flat.

For the same arguments and analysis of claim 16 and as contained in this Court's order on Parker's motion for summary judgment re infringement, issues of fact exist precluding summary judgment on claim 12.

**Claim 1:** Parker argues that summary judgment as to claim 1 should be denied because there exists a "flat" end cap as part of an "end cap" assembly in the Wix 57314 oil filter.  In addition, even

1   assuming this Court finds no literal infringement based on its construction of "flat," Wix has not

2   established a basis for granting summary judgment of no infringement under the doctrine of

3   equivalents. Wix has not provided any foundation for the argument that the end cap on the Wix

4   57314 oil filter element does not perform the same function as the claimed end cap.

5          Here, Wix has not discussed the theory or evidence of equivalence for claim 1.  Construing

6   every inference in favor of the moving party, Parker has presented evidence in which a jury could

7   find that the Wix filter has a "flat annular end cap."  Therefore, summary judgment will be denied on

8   Claim 1.

9   **E.      Summary Judgment That the 33599 Primary and Secondary Fuel Filter Elements is**

10          **Inappropriate**

11          The Court agrees with Parker's analysis in its supplemental brief.  In light of the Court's

12   claim constructions, there are disputed issues of material fact which make summary judgment of

13   non-infringement inappropriate. The Court construed the claim term "keys" to include "both

14   structure and function." (Doc. 201, Order p. 39.)  There is no evidence before the Court as to the

15   function of the 33599 fuel filter elements' keys.  Parker submits evidence by its technical expert that

16   the keys in the 33599 secondary fuel filter element "engage a valve mechanism, unlock or release a

17   latch device, and engage or actuate a valve device." Lambert Fourth Decl. ¶ 3 and Ex. LL

18   (Addendum of Charles A. Garris, Jr., April 2, 2008).  Accordingly, Wix has failed to carry its burden

19   of proof.

20   **F.      Summary Judgment as to the 33899 Secondary Fuel Filter Element is Inappropriate**

21          Similarly, Wix does not offer proof of the function of the keys or "protrusions" in the 33899

22   secondary fuel filter element.  Again, Parker has submitted evidence from its technical expert that the

23   keys in the 33899 secondary fuel filter element "engage a valve mechanism, unlock or release a latch

24   device, and engage or actuate a valve device." Lambert Fourth Decl. ¶ 3 and Ex. LL (Addendum of

25   Charles A. Garris, Jr., April 2, 2008).

26          Wix further argues that many claims require the filter to include an "annular base" in the '168

27   patent family.  Wix argues that the Court's construction of the term "annular base" support Wix's

28   motion for summary judgment because the accused devise does not have an "annular base."  The

1   Court construed "annular base" to mean that the base cannot be non-continuous. Based on the

2   Court's construction there is no annular base in Wix's 33899 secondary fuel filter element. The new

3   33899, introduced in March, 2006, eliminated the annular base entirely and thereby avoided the '168

4   patent and later patent claims that have an annular base as an element.

5           Parker argues that there is  a question of fact whether the "ledges" of Wix's fuel filter

6   infringes under the doctrine of equivalents.  Parker argues that the "ledges" of Wix's 33899

7   secondary fuel filter elements are an equivalent structure of an "annular base" that passes the

8   function-way-result test. The function is to provide a cylindrical passage through which the standpipe

9   can pass; the way it does this is by having a radially inward structure which forces the standpipe to

10  move in a certain direction; and the result accomplished by the so-called "ledges" is the same as the

11  annular base in the '168 patent family.

12          The evidence before the Court establishes that there is an issue of fact as to whether the

13  accused device infringes on the '168 patent family.  Parker submits evidence by its technical expert

14  that the accused device has an "annular base."  "Annular base" is connected to the cylindrical portion

15  defining a central opening and this opening can receive a pipe."  (See Garris Report, Exh. 28 (under

16  seal), p. 11, Claim 1, p. 16, Claim 21 to Dec. Koelsch (Doc. 149).)  Accordingly, summary judgment

17  of non infringement of the 33899 is inappropriate.

18          The Federal Circuit has recognized that summary judgment may be as appropriate in patent

19  cases as in any other. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed.Cir.1984). However, the

20  instant suit, as in many patent cases, gives rise to numerous and complex issues of technological fact

21  and opposing expert testimony, rendering it unsuitable for summary judgment. *Id.*

22                                    **CONCLUSION**

23          For the foregoing reasons, the Court orders as to Wix's motion for summary judgment as to

24  non-infringement is DENIED.

25  IT IS SO ORDERED.

26  **Dated:    April 10, 2008               /s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE

27

28